# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-105V
(not to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *
TRACY GAMBRILL *and* KEVIN           *
GAMBRILL, *parents and natural guardians* *
*of* R.G., *a minor*,                *
                                     *      Special Master Corcoran
                                     *
            Petitioners,              *      Filed:  November 29, 2018
                                     *
      v.                             *      Decision; Attorney's Fees and Costs;
                                     *      Reasonable Basis; Final Award.
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
            Respondent.               *
                                     *
* * * * * * * * * * * * * * * * * * * * * * * * *

*Robert J. Krakow,* Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioners.

*Jay M. All*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## **FINAL ATTORNEY'S FEES AND COSTS DECISION**[1]

On January 23, 2017, Tracy and Kevin Gambrill filed a petition on behalf of their minor child, R.G., seeking compensation under the National Vaccine Injury Compensation Program.[2] The Petition alleged that the measles-mumps-rubella ("MMR") and varicella vaccines R.G. received on January 24, 2014, and the diphtheria-tetanus-acellular pertussis ("DTaP") vaccine she received on January 30, 2015, caused her to suffer from gastrointestinal inflammation and other

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

injuries resulting in failure to thrive and "other severe health consequences". *See* Petition ("Pet.") (ECF No. 1) at 1-2. Following the filing of medical records and the Rule 4(c) Report, the case was dismissed on June 4, 2018 (ECF No. 43), for insufficient proof.

Petitioners' counsel filed a motion requesting a final award of attorney's fees and costs on October 29, 2018. *See* Final Motion for Attorney's Fees ("Fees App.") (ECF No. 47). Counsel requests reimbursement of attorney's fees in the amount of $24,883.79 (representing $20,458.00 in attorney's fees, plus $4,425.79 in costs). Fees App. at 3, 19.

For the reasons stated below, I hereby **GRANT** counsel's request in full, awarding attorney's fees and costs in the total amount of **$24,883.79**.

## Procedural History

This action has been pending for just under two years. Following the filing of the Petition on January 23, 2017 (ECF No. 1), the case proceeded in an overall efficient matter. Counsel filed the majority of R.G.'s medical records by July 31, 2017, and the parties filed the Joint Statement of Completion that same day (though it was later determined that additional records were needed to further assess the claim). *See* ECF Nos. 30-31. Respondent thereafter filed his Rule 4(c) Report on September 27, 2017, contesting Petitioners' right to an entitlement award (ECF No. 34).

On October 10, 2017, I held an initial status conference with the parties to discuss my views of the case in light of the filing of the Rule 4(c) Report. During the conference, counsel requested that I allow Petitioners time to seek out an expert opinion in support of their claim. I agreed to do so, and directed Petitioners to file an expert report on or before January 15, 2018. *See* Scheduling Order, dated Nov. 1, 2017 (Docket entry). Petitioners thereafter requested one extension of time to file the above-mentioned report, which I granted. *See* Scheduling Order, dated January 11, 2018 (Docket entry) (extending Petitioners' expert report deadline to March 1, 2018).

On March 1, 2018, Petitioners filed a motion requesting additional time to determine how they wished to proceed with their claim. In it, Petitioners indicated they had been unable to retain an opining expert, and wished for time to confer with counsel regarding how best to proceed. *See* Motion, dated March 1, 2018 (ECF No. 38).[3] Petitioners filed an additional status report on April 23, 2018, requesting that I grant a six-month stay of proceedings to allow Petitioners time to have R.G. evaluated for potential alternative diagnoses, including rheumatoid arthritis and the appearance of skin nodules—both of which were not alleged in the Petition and were unsupported by the medical records filed at the time. *See* Status Report, dated Apr. 23, 2018 (ECF No. 40).

---

[3] In the interim, a status conference was scheduled to take place on April 24, 2018. *See* Order, dated Apr. 4, 2018 (Docket entry).

2

I held an additional status conference with the parties on April 24, 2018, at which time I expressed concern regarding the claim's viability, given the posture of the proceedings (plus Petitioners' request that I allow them additional time to explore other diagnoses not alleged in the Petition). *See* Scheduling Order, dated Apr. 25 (2018) (ECF No. 41). I acknowledged in the conference that as the Rule 4(c) Report corroborated, the medical record referenced R.G.'s vaccinations as possible explanations for her gastrointestinal symptoms (though it appeared her relevant testing did not indicate a clear diagnosis). *Id.* at 1. I thus impressed upon counsel the importance of obtaining an expert report to establish a theory of causation given the facts of R.G.'s case. *Id.* I further noted that Program case law does not allow petitioners to delay a case indefinitely in hopes that additional medical investigation will salvage the claim. *Id.* at 1-2. In light of the above, I agreed to allow Petitioners one more month to determine how they wished to proceed (i.e. by filing an expert report in support of the injuries alleged in the Petition or showing cause why the claim should not be dismissed for failure of proof). *Id.* at 2.

On May 31, 2018, rather than file an expert report or a brief showing cause, Petitioners filed a motion requesting dismissal of the claim. *See* Motion to Dismiss, dated Mar. 31, 2018 (ECF No. 42). The motion stated that Petitioners had determined that they would be unable to prove entitlement to compensation based on their own investigation of the scientific literature and Program case law. *Id.* at 1. I thereafter dismissed the case for insufficient proof on June 4, 2018 (ECF No. 43).

**Fees Request**

According to the billing record submitted with the fees request, Petitioners' counsel began reviewing the case file on January 18, 2017, roughly one week prior to filing the claim. *See, e.g.*, Tab 2 to Fees App. at 1 (January 18, 2017 entry noting first contact with client), 1 (January 19, 2017 entry noting receipt of two emails from client with "substantial amount of records and other notes").

Despite the impending filing deadline, the same record reveals that Mr. Krakow began reviewing R.G.'s medical records on January 19, 2017 (five days prior to filing). *See* Tab 2 to Fees App. at 1 (January 19, 2017 entry noting review of 43 pages of pediatric records), 1 (January 20, 2017 entry noting review of reports from immunologist at the University of Arkansas Children's Hospital[4]), 1 (January 21, 2017 entry noting further review of medical records and evidence supporting vaccine reaction). Based upon my review, it appears that counsel completed roughly eight hours of work pertaining to record review prior to filing the claim, but filed the majority of

---

[4] Notably, these records included statements from R.G.'s treating immunologist indicating a possible link between her vaccinations and onset of GI symptoms. *See, e.g.*, Ex. 1 at 8-9.

3

R.G.'s records thereafter between January and July 2017. After the filing of records, the parties filed the Joint Statement of Completion on July 31, 2017 (ECF No. 29), followed by the Rule 4(c) Report on September 27, 2017 (ECF No. 34).[5]

In the pending fees request, counsel asks that he be compensated at a rate of $425-435 per hour for work performed in 2017, with an increase to $450 per hour for work completed in 2018. *See generally* Tab 2 to Fees App. For paralegal time expended on the matter, Petitioners request a rate of $140-150 per hour for work completed by counsel in 2017-2018 (but billed at a paralegal rate). *Id.* Pursuant to the General Order No. 9 statement, Petitioners maintain that they have incurred no personal costs related to this matter. *See* Tab 6 to Fees App. at 2 (ECF No. 50). The fees application also requests reimbursement for litigation costs incurred (representing medical record requests, the filing fee, mailing and postage, and an expert medical review by Dr. Eric Gershwin). Tab 3 to Fees App. at 1.

Petitioners' fees request also sets forth counsel's view regarding the claim's reasonable basis. Overall, counsel maintains that he diligently reviewed R.G.'s medical records and determined the evidence he possessed supported a filing of the claim, given assertions from R.G.'s treating physicians concerning a possible relationship between her vaccinations and onset of documented GI symptoms (including persistent vomiting). *See* Fees App. at 6-8 (citing Ex. 1 at 6, 8-9), 11. Counsel otherwise maintains that he acted appropriately in assessing the claim throughout the entirety of the action and moved to voluntarily dismiss the claim once he determined he could not locate an expert who could opine in Petitioners' favor. *Id.* at 11.

Respondent reacted to the fees motion on November 7, 2018, stating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount (if any) to be awarded. *See* Response, dated Nov. 7, 2018 (ECF No. 48) ("Response") at 2-3. Although it does not appear that Respondent is contesting the present fees request on reasonable basis grounds, the Response nonetheless raises that I expressed some concern with regard to the claim's viability during the lifespan of the matter. *See id.* at 2.

On November 7, 2018, counsel filed a Reply, asserting that Petitioners rely fully on the facts, law, and arguments presented in their original fees request. *See* Reply, dated Nov. 7, 2018 (ECF No. 49). The matter is thus ripe for disposition.

---

[5] The record also reveals that counsel filed additional medical records in August 2017. *See* ECF Nos. 30-31.

## Analysis

I.     **Reasonable Basis Standard**

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[6] sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the to the case. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)).

The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, shed some light on the extent of objective evidence supporting a claim. *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim at minimum. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim *or* the medical support for a vaccine petition") (emphasis added)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate whether the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id.* at *5. The existence of an impending statute of limitations deadline, however, has been removed from consideration under the "totality of the

---

[6] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

circumstances" analysis. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed, Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, slip. op. at 9-10 (Fed Cl. June 4, 2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted.") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

## II.   Petitioners' Claim Had Sufficient Reasonable Basis for a Fees Award

Based on my review of the case history, coupled with the evidence of counsel's course of representation of Petitioners as set forth in the billing records, I find that the claim did possess reasonable basis, despite its ultimate weakness.

Counsel maintains that there was sufficient objective evidence in the record to support Petitioners' allegations that R.G. suffered "gastrointestinal inflammation" (and various sequelae) following receipt of the MMR and varicella vaccines in 2014, and the DTaP vaccine in 2015. In particular, Petitioners point to documented treater statements concluding that R.G. had experienced some kind of adverse reaction following receipt of the above-mentioned vaccinations. *See* Fees App. at 6-7 (citing Ex. 1 at 6-9), 11.

There are instances in the medical record in which R.G.'s parents reported vomiting following R.G.'s January 2014 vaccinations. Records *close-in-time* to vaccine administration, however, seem to indicate that R.G.'s treating pediatrician assessed her with a possible viral illness or gastrointestinal reflux disease ("GERD").[7] *See, e.g.*, Ex. 2 at 12-13 (February 17, 2014 visit noting complaints of vomiting with onset five days prior with resulting diagnosis of "S/P viral illness," weight loss, and GERD), 10 (February 19, 2014 visit for persistent vomiting), 8 (March 26, 2014 visit noting the same vomiting complaints and concluding R.G. had GERD with possible exacerbation from viral illness), 3 (April 25, 2014 visit noting GERD had resolved but parents continued to report diet concerns).[8] Thus, the records from the time immediately around the administration of the MMR/varicella vaccines in 2014 would not seem strongly supportive of an association between vaccination and injury.

---

[7] R.G.'s parents reported some concern for a vaccine-induced injury during these earlier-in-time visits, though it does not appear the treating pediatrician made a connection between the vaccines and R.G.'s symptoms. *See* Ex. 2 at 3, 8-9.

[8] Pre-vaccination records indicate R.G. was treated for various medical conditions prior to January 2014 (including pharyngitis, a viral infection, and eczema). *See* Ex. 2 at 25, 28-29.

The relevant medical records also reveal, however, that a subsequent treating pediatrician and treating immunologist at least considered a possible relationship between R.G.'s GI symptom onset and her 2014 vaccinations (one of which also questioned a GERD diagnosis), though admittedly some references contained in those same treatment notes could be reasonably interpreted as reflecting primarily parental concerns for a vaccine-induced reaction. *See, e.g.*, Ex. 17 at 323 (June 10, 2014 questionnaire noting parents reported R.G. had an "MMR reaction w/ongoing stomach irritation, constipation & not gaining weight"); *but see* Ex. 17 at 324 (June 10, 2014 pediatric note recommending R.G. see an immunologist regarding a vaccine reaction), 310 (June 12, 2014 telephone encounter noting recurrent vomiting "not typical" of GERD in newborn as reason for treater referral to GI physician/immunologist); Ex. 8 at 181 (August 28, 2014 immunology visit note indicating treater allowed for the possibility that R.G. experienced an "idiosyncratic reaction" to a vaccination, but noting it was unlikely an IgE-mediated or allergic response).

Additional medical visits for recurring vomiting following R.G.'s January 2014 vaccinations also reveal concern regarding the etiology of R.G.'s symptoms (and some visits resulted in assessments centered on other gastrointestinal conditions, with no mention of vaccine involvement). *See, e.g.*, Ex. 8 at 166 (September 15, 2014 GI visit for reported allergy to MMR/varicella vaccine, but assessment was GERD flare); Ex. 8 at 152 (October 30, 2014 GI visit with resulting impression of "vomiting of uncertain etiology").

Following the DTaP vaccination on January 30, 2015,[9] the record reveals even more statements by treaters who assessed R.G. but reported a possible adverse reaction to both the vaccinations received in 2014 and the more recent receipt of the DTaP vaccine in 2015. *See, e.g.*, Ex. 1 at 8 (May 28, 2015 pediatric visit noting it was possible R.G. experienced an "adverse reaction to vaccine" but likely not an IgE-mediated response), 8 (same visit note indicating treater recommended withholding vaccination until further antibody titer testing could be completed); Ex. 8 at 34 (July 14, 2015 GI note indicating a treater impression of "unusual reflux associated with immunization"); Ex. 8 at 5, 7 (October 11, 2016 immunology follow-up visit noting "adverse vaccine reaction" in the impression section, with a plan to repeat antibody titers which had been shown to be protective in the past); Ex. 15 at 20 (April 11, 2017 well-visit indicating "adverse vaccine reaction" in impression/diagnosis, along with GERD, and chronic constipation).[10]

---

[9] The diagnosis of "failure to thrive" was first made during R.G.'s pediatric visit on January 30, 2015 (the day she received the TDaP vaccination). *See* Ex. 10 at 11.

[10] At times however, simultaneous-in-time records following R.G.'s January 2015 DTaP vaccination similarly reveal that treaters also considered her symptoms to be attributable to the same GI conditions noted earlier in 2014 (again, with no mention of involvement of a vaccination). *See, e.g.*, Ex. 10 at 7-8 (February 20, 2015 GI visit noting parents reported recurrent vomiting since receiving the DTaP vaccination, but resulting assessment was viral gastroenteritis with unknown etiology); Ex. 16 at 33 (February 3, 2016 GI visit indicating a history of severe vomiting following

7

All in all, the medical records filed in the present matter reveal some facial deficiencies with regard to Petitioners' claim. The record is vague as to the precise nature of R.G.'s injuries (though they appear to be mostly GI-related). In addition, while treatment records do corroborate Petitioners' assertions that some of R.G.'s treaters considered her vaccinations as playing a possible causal role in her subsequent symptoms, it does not appear that her treaters (in the aggregate) arrived at a firm consensus regarding her appropriate diagnosis or its etiology. The above-mentioned weaknesses, however, do not obviate the reasonable basis of her claim. As detailed above, various treaters opined that R.G.'s symptoms *could* be supportive of some vaccine-induced injury (based on their own assessment of her overall health course following two sets of vaccinations and the reported GI symptoms documented in the record). Even if such evidence looks weak in hindsight (especially given the claim's dismissal), it is sufficiently objective to conclude that the case had reasonable basis prior to filing. It was thus reasonable for counsel to proceed with filing the claim.

My analysis is not complete, however. I must also determine, based on the totality of the circumstances and the evidentiary showing, if counsel should receive a full award of attorney's fees through October 2018 (as requested). Well-reasoned decisions have noted that even cases that begin with reasonable basis can lose it over time, once more evidence comes in that reveals a claim's weaknesses. *See, e.g., Pannick v. Sec'y of Health & Human Servs.*, No. 16-0510V, 2016 WL 8376894, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2016). I have ruled that reasonable basis ceased to exist for certain claims that initially had it for this very reason. *See, e.g., Curran v. Sec'y of Health & Human Servs.,* No. 15-804V, 2017 WL 1718791 (Fed. Cl. Spec. Mstr. Mar. 24, 2017); *see also Fieselman v. Sec'y of Health & Human Servs*., No. 17-170V, 2017 WL 5398625 (Fed. Cl. Spec. Mstr. Sept. 14, 2017); *Butler v. Sec'y of Health & Human Servs*., No. 16-1620V, 2017 WL 3811134 (Fed. Cl. Spec. Mstr. Aug. 3, 2017).

After consulting with a medical expert, counsel maintains it was determined that the facts of this case (coupled with counsel's own investigation into the scientific literature) could not support a continuance of the claim. Fees App. at 11. Counsel explains that he then acted properly in notifying the court of this newly acquired information, and proceeded in an efficient manner by advising Petitioners of their options and requesting dismissal thereafter. *Id.*

Based on my overall view of the case's progression, I find that counsel acted appropriately in attempting to represent Petitioners while taking note of my concerns about the claim's viability. As the billing record reveals, Mr. Krakow reviewed Petitioners' claim and worked to determine its likelihood of success. *See generally* Fees App. He also consulted with a reviewing expert after

---

MMR/varicella vaccinations, but noting symptoms were now well-controlled due to Prevacid and dietary changes); Ex. 15 at 65 (August 10, 2016 GI assessment of constipation and abdominal pain).

filing the claim (upon my direction) to determine if he could support the claim given R.G.'s varied health record. Once Petitioners' reviewing expert concluded he could not offer an opinion, counsel properly requested dismissal once that search proved unfruitful. Counsel thus relied not simply on subjective statements of the Petitioners but on actual objective statements by treaters, while subjecting the questionable or weaker kinds of evidence to testing via expert opinion.

Overall, this case likely would have been difficult to prosecute successfully (given the somewhat weak treater support for a vaccine-induced injury, coupled with the dispute regarding R.G.'s proper diagnosis). The claim was therefore appropriately dismissed under the circumstances. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("[a]n assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim" (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis through its dismissal for a fees award.

### III. Calculation of Fees Award

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at 1349. A recent special master's decision established the hourly rate ranges for attorneys of different levels of experience who are entitled to the forum rate, and it has since been relied upon more generally by the Office of Special Masters. *See McCulloch*

*v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

With all of the above in mind, I turn to Petitioners' fees request. Petitioners ask that Mr. Krakow be reimbursed at varying rates for work performed from 2017-2018. Petitioners request $425-435 per hour for Mr. Krakow's work in 2017, with an increase to $450 per hour for work completed in 2018. *See generally* Tab 2 to Fees App. Petitioners also request rates ranging from $140-150 per hour for paralegal work (completed by Mr. Krakow but billed at a lower rate) in 2017-2018. *See id.*

In my past decisions, I have determined that Mr. Krakow's firm, located in New York, is entitled to forum rates. *See, e.g., Laderer v. Sec'y of Health & Human Servs.,* No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2016). He is therefore entitled to the relevant rates established in *McCulloch*.[11] The rates requested herein are the same as those awarded to counsel in my previous decisions (as well as those awarded by other special masters). *See, e.g.*, *Johnson v. Sec'y of Health & Human Servs.*, No. 15-643V, 2018 WL 2772684, at *2 (Fed. Cl. Spec. Mstr. Apr. 13, 2018); *Hamilton v. Sec'y of Health & Human Servs.*, No. 14-785, 2018 WL 2772197, at *6-7 (Fed. Cl. Spec. Mstr. Apr. 12, 2018). Thus, I will reimburse counsel at the rates requested herein without reduction.

The majority of the hours expended on this matter (40.15 hours of attorney time and 19.4 hours of paralegal-billed time in total) appear to be reasonable in light of the facts discussed above. I do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. Therefore, the requested hours will be reimbursed in full.

Petitioners also request that counsel be reimbursed for $4,425.79 in costs (representing the filing fee, medical records requests, mailing and postage costs, and an expert consult with Dr. Eric Gershwin). Tab 3 to Fees App. at 1. According to the fee application, Petitioners request that Dr. Gershwin be compensated at a rate of $500 per hour for his work on this matter (representing a total of $3,875.00 for 7.75 hours of expert services rendered). Tab 4 to Fees App. at 33. I recently

---

[11] The *McCulloch* forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website. The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

10

issued a decision awarding Dr. Gershwin a rate of $500 per hour for substantive work, consistent with the rates awarded him by other special maters. *See, e.g.*, *Kostal v. Sec'y of Health & Human Servs.,* No. 17-193V, 2018 WL 1835209, at *5 (Fed. Cl. Spec. Mstr. Feb. 21, 2018); *Hogan v. Sec'y of Health & Human Servs.,* No. 13-780V, 2017 WL 3585648, at *4 (Fed. Cl. Spec. Mstr. July 24, 2017); *Rosof v. Sec'y of Health & Human Servs.,* No. 14-766V, 2017 WL 1649802, at *4 (Fed. Cl. Spec. Mstr. Mar. 31, 2017). Dr. Gershwin's review was likely instrumental in Petitioners' decision to request dismissal of the matter, and he should be compensated for his work completed herein at the rate requested. The remainder of the costs related to this matter appear to be reasonable and will be awarded in full.

## CONCLUSION

For the aforementioned reasons, I award a total of **$24,883.79** (representing $20,458.00 in attorney's fees, plus $4,425.79 in costs) as a lump sum in the form of a check payable to Petitioners' counsel, Robert Krakow, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[12]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.